**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYMEER SCALES, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 24-cv-6107-GAW |
| CITIZENS BANK, N.A., *et al.* | : | |
| | : | |
| *Defendants*. | : | |

## MEMORANDUM OPINION

This case arises from a bank's efforts to verify a customer's identity before authorizing a substantial wire transfer. Plaintiff Tymeer Scales brought this action against Citizens Bank, N.A. ("Bank") and its branch manager, David Hawkins ("Hawkins") (collectively, the "Defendants"), asserting claims for false imprisonment and negligent training and supervision under Maryland law. The underlying events began when Plaintiff attempted to wire approximately $75,000 from his Citizens Bank account to purchase a vehicle. When Plaintiff was unable to complete the Bank's required identity-verification process, Hawkins questioned the authenticity of Plaintiff's identification, contacted the Bank's internal security team, and requested that the police be called. Although the responding officers ultimately determined that Plaintiff's identification was authentic, Plaintiff contends that Defendants' actions unlawfully restrained his liberty and reflected negligent employee training and supervision.

Banks have both a practical and public-policy interest in maintaining rigorous procedures to authenticate customers and protect the funds entrusted to them, particularly when customers seek to transfer substantial sums of money. The question here is whether Defendants' conduct in executing those procedures gives rise to liability for false imprisonment or negligent training and supervision. As explained below, the record does not support either claim. Accordingly, Defendants' Motion for Summary Judgment (Dkt. No. 40) is granted.

## I. Background

Plaintiff opened a Citizens Bank deposit account in October 2022 at a Philadelphia, Pennsylvania branch. Joint Statement of Undisputed Facts (Joint Statement) (Dkt. No. 41) at ¶ 3.[1] On June 28, 2023, Plaintiff "received a check for $278,998.07 as a settlement payment for a personal injury lawsuit brought by [Plaintiff]." *Id.* at ¶ 4.

On July 3, 2023, Plaintiff's friend, Mr. Hasan Miller, drove Plaintiff from Pennsylvania to a Lexus dealership in Maryland. *Id.* at ¶¶ 13–14. Plaintiff decided to purchase a 2023 Lexus RC-F priced at around $75,000. *Id.* at ¶¶ 15–16. He "initially planned to pay with his debit card but, due to the amount of the transaction, he offered to pay using cash or a cashier's check." *Id.* at ¶ 16. The dealership employee informed Plaintiff that he "could, instead, wire the funds to purchase the car," which led Plaintiff to visit the Silver Spring Citizens Bank branch. *Id.* at ¶¶ 17–18.

---

[1] The Joint Statement of Undisputed Facts is fully incorporated into the Defendants' Motion for Summary Judgment and accompanying Brief in Support thereof.

At the branch, Plaintiff first spoke with a teller, who then brought in Hawkins, the branch manager, to help. *Id.* at ¶ 19. Plaintiff asked Hawkins "to complete a wire transfer for around $75,000 to purchase the Lexus." *Id.* at ¶ 20. Hawkins then confirmed that there were no holds on the funds in Plaintiff's account. *Id.* at ¶ 21.

To complete a wire transfer of over $2,500, Citizens Bank requires a photo identification and a one-time passcode. *Id.* at ¶ 22. Hawkins asked Plaintiff for identification, and Plaintiff provided his driver's license. *Id.* at ¶ 23. Hawkins then sent Plaintiff a one-time passcode to the phone number on file. Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Response) (Dkt. No. 44) at 3 (citation omitted).

Plaintiff did not receive the one-time passcode and was thus unable to provide the PIN to the Bank. Defendants' Motion for Summary Judgment at 5; Exhibit A to Defendants' Motion for Summary Judgment, 142:9–10. Plaintiff informed Hawkins that the Silver Spring branch had an old number for him "even though his new number had been updated in Citizens [B]ank records at his Philadelphia branch." Response at 3. Even when Hawkins sent the one-time passcode to the new phone number, Plaintiff did not receive the one-time passcode. Defendants' Motion for Summary Judgment at 5; Exhibit A to Defendants' Motion for Summary Judgment, 142:9–10; Exhibit C to Defendants' Motion for Summary Judgment, 85:9–11, 91:10–11.

Although Plaintiff could not verify his identity by providing Hawkins with the one-time passcode, "Citizens Bank managers may override the one-time passcode

requirement if they can otherwise authenticate the customer's identification using enhanced authentication." *Id.* Hawkins attempted to do so here by asking Plaintiff several enhanced authentication questions, including inquiries about the balance of his account and the money deposited into his account at the end of June. Joint Statement at ¶ 26; Defendants' Motion for Summary Judgment at 6. Plaintiff answered these questions, explaining that "he received the Settlement Check from a lawsuit the week before." Joint Statement at ¶ 27.

Hawkins then ran Plaintiff's driver's license under a blacklight. *Id.* at ¶ 28. The driver's license "did not pass the blacklight test, indicating that the driver's license could potentially be fraudulent." Defendants' Motion for Summary Judgment at 6. At this point, Hawkins called Alertline, "an internal Citizens Bank phone number to reach an internal security team that advises branch personnel [on] how to address situations that arise in the branches." Joint Statement at ¶¶ 29–30. After this call, an "All Funds hold" was placed on Plaintiff's account. *Id.* at ¶¶ 31, 42. This hold prevented the distribution of funds from Plaintiff's account. Defendants' Motion for Summary Judgment at 8–9. Silver Spring Branch Assistant Manager Barbara Gordon called the police upon Hawkins's request. Joint Statement at ¶¶ 32–33.

Bank security was not present at the branch during Plaintiff's visit. *Id.* at ¶ 34. Hawkins handed Plaintiff's license to the police when the officers arrived. *Id.* at ¶¶ 36–37. The officers examined Plaintiff's driver's license, determined that it was authentic identification, and then handed it back to Plaintiff. *Id.* at ¶ 40. Mr. Miller then drove Plaintiff back to Philadelphia. *Id.* at ¶ 43.

Hawkins worked at Citizens Bank from at least 2014 through July 2023 and had previous experience working in banking services at other financial institutions. *Id.* at ¶ 51. Hawkins completed mandatory onboarding training. *Id.* at ¶ 52. He also continued to receive annual and quarterly training from Citizens Bank. *Id.* Hawkins recalled receiving training regarding fraud identification and mitigation but did not remember what the training entailed or its specific content. *Id.* at ¶ 53. He also "received and completed training regarding retail wire transfers." *Id.* at ¶ 54.

## II. Procedural History

Plaintiff initiated this lawsuit on November 11, 2024. Complaint (Dkt. No. 1). Plaintiff's Amended Complaint alleged that Defendants violated 42 U.S.C. § 1981 by racially discriminating against him. Amended Complaint (Dkt. No. 15). Further, Plaintiff brought false imprisonment and negligent training and supervision claims arising under Maryland state law. *Id.* On April 18, 2025, Defendants moved for dismissal of, *inter alia*, the § 1981 claim. Defendants' Motion to Dismiss (Dkt. No. 16). On July 11, 2025, the Court dismissed Plaintiff's § 1981 claim with prejudice.[2] Order dated July 11, 2025 (Dkt. No. 23). Defendants now move for summary judgment on the remaining claims.

---

[2] The Court originally retained jurisdiction because of the federal question. 28 U.S.C. § 1331. Although the Court dismissed the federal claim, the Court has discretion to retain jurisdiction over the remaining state law claims. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."); *Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction.").

## III. Analysis

### A. Standard for Granting Summary Judgment

Summary judgment is appropriate "if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002). The Court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). After drawing those inferences, the relevant inquiry is "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252. "Although the non-moving party receives the benefit of all factual inferences, . . . the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact" and "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal citations omitted). "Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation

to produce evidence negating its opponent's case." *Nat'l State Bank v. Fed. Rsrv. Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992). "The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Id.*

**B. Plaintiff's False Imprisonment Claim Under Maryland Law**

Under Maryland law, to establish a false imprisonment claim, the plaintiff must show: "(1) the deprivation of the liberty of another; (2) without [his or her] consent; and (3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000) (citing *Montgomery Ward v. Wilson*, 664 A.2d 916, 925–26 (Md. 1995)). Alternatively, parties may be liable for false imprisonment even if they did not directly restrain the person's freedom, where they wrongfully instigated the person's warrantless arrest. *Montgomery Ward*, 664 A.2d at 926–27. Plaintiff fails to establish that Defendants deprived him of his liberty or, alternatively, that they wrongfully instigated his warrantless arrest.

1. <u>Deprivation of Liberty</u>

There is no evidence that Defendants deprived Plaintiff of his liberty. "To constitute a case of false imprisonment there must be some direct restraint of the person . . . Any exercise of force, or threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Est. of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 331 (D. Md. 2012) (quoting *Mason v. Wrightson*, 109 A.2d 128, 131 (Md. 1954)). Where there is no arrest or detention, "a hallmark of false imprisonment is a continuing action on the part of the tortfeasor

that restrains the movement of the plaintiff." *Gray v. Kern*, 124 F. Supp. 3d 600, 615 (D. Md. 2015), *aff'd in part, vacated in part sub nom. Gray by Gray v. Kern*, 702 F. App'x 132 (4th Cir. 2017).

Here, Plaintiff fails to establish a claim for false imprisonment because there is no evidence demonstrating that Defendants "exercised force or the threat of force" to deprive him of his liberty or compelled him to remain at the Bank. *Cf. Lamb v. State*, 93 Md. App. 422, 426, 613 A.2d 402 (1992) (defining "force" as battery or "actual violence" and "threat of force" as assault or "putting in fear"). Further, as confirmed by Plaintiff's deposition testimony, there is no evidence that anyone physically restrained him or threatened him with violence:

> Q. Before the cops arrived, did anyone physically restrain you?
>
> A. No.
>
> Q. Before the cops arrived, did anyone lock you in a room?
>
> A. No.
>
> Q. Before the cops arrived, did anyone threaten you with any sort of violence?
>
> A. No.

Exhibit A to Defendants' Motion for Summary Judgment (Dkt. No. 40), 134:9–18. Plaintiff also conceded that no "explicit verbal threat was made." Response at 8.

Instead, Plaintiff sets forth two misplaced arguments to support his position that Defendants directly restrained him. First, Plaintiff asserts that Hawkins

confined him to the Citizens Bank lobby by directing him to wait while Hawkins processed the transaction without informing Plaintiff that he was free to leave. Response at 7. Even construing these allegations in the light most favorable to Plaintiff, these allegations are insufficient as a matter of law to establish that Defendants directly restrained Plaintiff. As explained in the very case Plaintiff cites in support of his argument, the confinement of the person must be complete to establish false imprisonment. *See Zavala v. Wal-Mart Stores*, No. 03-5309, 2011 U.S. Dist. LEXIS 38140, at *10–12 (D.N.J. Apr. 7, 2011) (dismissing false imprisonment claim because the plaintiffs had alternative means of a safe exit at the time they were allegedly falsely imprisoned), *aff'd*, 691 F.3d 527, 546 (3d Cir. 2012); *see also Mason*, 109 A.2d at 131. Here, Plaintiff could have safely left the premises instead of waiting in the lobby.

Second, Plaintiff argues that there is a "triable question of fact" as to "whether [Plaintiff] was … not free to leave due to the withholding of his [driver's license]." Response at 9. Because Plaintiff cited no case law supporting this position, the Court independently reviewed decisions addressing whether a defendant's possession of a plaintiff's driver's license constitutes restraint for purposes of a false imprisonment claim. The Court found *Henderson v. Claire's Stores, Inc.* instructive.

In *Henderson*, the plaintiff's false imprisonment claim "survive[d] summary judgment by the thinnest of margins" where the cashier possessed the plaintiff's driver's license and credit card. *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 734 (D. Md. 2009). That plaintiff decided to abandon her purchase and leave the

store, and when she asked for her license and credit card to be returned to her, the cashier refused to do so. *Id.* at 729. There, the court determined that "Henderson could not leave the store and (lawfully) drive away without her driver's license. The court concluded that Whelan's detention of Henderson's license satisfied the 'force' element." *Id.* at 734.

Unlike the plaintiff in *Henderson*, Plaintiff could lawfully leave the Bank. Indeed, Mr. Miller, who drove Plaintiff to the branch, remained in possession of his driver's license, and Plaintiff could have asked Mr. Miller to drive him away. Joint Statement at ¶¶ 13–14, 18, 43. Thus, a similar "detention" of Plaintiff's license did not restrain his movement and does not satisfy the "force" element here.[3] *Nicholson v. Balt. Police Dep't*, Civ. No. DKC 20-3146, 2023 WL 4549741, at *9 (D. Md. July 14, 2023) (citing *Smith v. Comair, Inc.*, 134 F.3d 254, 260 (4th Cir. 1998)) ("False imprisonment results only if the restraint be a total one, rather than a mere obstruction of the right to go where the plaintiff pleases."). Plaintiff therefore fails to satisfy this element of his false imprisonment claim.

2. <u>Consent and Legal Justification</u>

Because Plaintiff cannot satisfy the first element, the Court does not need to make a determination regarding the second and third elements of the false imprisonment claim.

---

[3] Further distinguishing this case from *Henderson*, Plaintiff does not provide facts indicating that he abandoned the wire transfer or attempted to leave the Bank branch during the time that the Defendants held onto the license.

3. <u>False Imprisonment Based on Police Action</u>

Plaintiff presents an alternative argument that Defendants provided false statements to the police and thus caused Plaintiff to be detained. Response at 10. In Maryland, "[a] plaintiff may pursue [a claim for false imprisonment] against a defendant who causes the deprivation of liberty by another, such as a store [that] makes a report of shoplifting to police." *Dawson v. Baltimore City Bd. of School Comm'rs*, No. 2015, 2016 WL 6664900, at *6 (Md. Ct. Spec. App. Nov. 10, 2016). To be liable, a person must *knowingly* give false information to a police officer. *Montgomery Ward,* 664 A.2d at 927; *see also Dawson*, 2016 WL 6664900, at *6 (applying false arrest principles to false imprisonment). "A private person does not become liable for false arrest, however, when he provides information, even mistaken information, to lawful authorities, even though that information is the principal cause of another's imprisonment." *Dawson*, 2016 WL 6664900, at *6 (citing *Fletcher v. High's Dairy Prods. Div. of Capital Milk Producers Coop.*, 321 A.2d 821, 824 (Md. Ct. Spec. App. 1974)).

Plaintiff argues that a genuine issue of material fact exists concerning what information Defendants provided to the police. *See* Response at 10. Plaintiff acknowledges that Hawkins testified that he told the police that they could not authenticate Plaintiff's identification because it did not pass the Bank's tests. *See* Exhibit C to Defendants' Motion for Summary Judgment (Dkt. No. 40) at 146:12–18. Plaintiff argues that because there is no corroborating evidence, such as a video or

audio record, as to what Hawkins told the police, any reliance on Hawkins's testimony would require an impermissible credibility determination. *Id.*

The Court disagrees. "[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)) (internal quotation marks omitted). Here, Plaintiff does not cite any facts in the record that support the position that Hawkins lied to the police. Plaintiff merely speculates that Hawkins may have knowingly lied to the police because Plaintiff perceives Hawkins as untruthful. Without actual evidence from the record, Plaintiff also cannot establish a false imprisonment claim under this theory of liability.

**C. Plaintiff's Negligent Training and Supervision Claim Under Maryland Law**

To prevail on a negligent training and supervision claim under Maryland law, a plaintiff must establish the following elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries." *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022) (quoting *Jarvis v.*

*Securitas Sec. Servs. USA, Inc.*, No. 11-cv-654-AW, 2012 WL 527597, at *5 (D. Md. Feb. 16, 2012)).[4]

To help assess whether a plaintiff has met the elements of a negligent training and supervision claim, Maryland courts ordinarily require expert testimony to establish the applicable standard of care. *See Karn*, 590 F. Supp. 3d at 806; *Schultz v. Bank of America, N.A.*, 990 A.2d 1078, 1091 (Md. 2010) ("When negligence is alleged against a bank, as in other cases of alleged negligence in a professional context, expert testimony is ordinarily necessary to establish the applicable standard of care."). "[T]he plaintiff bears the burden of overcoming the presumption that due skill and care were used." *Schultz*, 990 A.2d at 1086 (quoting *Crockett v. Crothers*, 285 A.2d 612, 614 (Md. 1972) (internal quotation marks omitted)). If the plaintiff fails to provide such evidence, "the trial court may rule, in its general power to pass upon the sufficiency of the evidence, that there is not sufficient evidence to go to the [trier of fact]." *Id.* (quoting *Rodriguez v. Clarke*, 926 A.2d 736, 755 (Md. 2007) (internal quotation marks omitted)). Expert testimony is not required "when the negligent retention or supervision would be obvious to a reasonable jury member." *Karn*, 590

[4] The parties proffered two different standards for this claim. Plaintiff's Response states that to prove a negligent training and supervision claim, a plaintiff "must establish that her injury was caused by the tortious conduct of [an employee], that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and the employer's breach of its duty was the proximate cause of the Plaintiff's injuries." *Jordan v. W. Distrib. Co.*, 135 F. App'x 582, 589 (4th Cir. 2005). Defendants cited *Karn*, which appears to be the Maryland courts' current preferred wording of the negligent training and supervision elements. *See, e.g.*, *Mitchell v. Rite Aid of Maryland, Inc.*, 290 A.3d 1125, 1160 (Md. App. Ct. 2023); *Minnick v. Sw. Airline Co.*, No. 1:22-CV-03084-JMC, 2024 WL 4252988, at *4 (D. Md. Sept. 20, 2024) (agreeing that "the five-element standard for negligent hiring, training, retention, and supervision is simply a 'more descriptive recitation' of the basic elements of negligence[.]"). Accordingly, the Court will use the five-part test set forth in *Karn*.

F. Supp. 3d at 806; *Schultz*, 990 A.2d at 1086–87 ("[S]ometimes the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony.").

The Court finds *Schultz v. Bank of America, N.A.*, instructive in determining whether expert testimony is required in this case. There, the plaintiff alleged that a bank acted negligently and breached its contract with his deceased father by adding a third party to the decedent's account and permitting her to withdraw funds without properly verifying the identities of the individuals involved. *Schultz*, 990 A.2d at 1080. The issue on appeal was whether expert testimony was required to establish the standard of care for a bank when performing the transaction. *Id.* at 1089. The plaintiff argued that expert testimony was not necessary because "a bank seeking to assist a customer to add a name to a checking account is an experience universally shared." *Id.* at 1090.

The Supreme Court of Maryland (formerly the Court of Appeals) disagreed with the plaintiff. *Id.* The court noted that banking is a "complex business" and that "ordinarily it will be necessary to present expert testimony so that the trier of fact can understand the scope of that frequently complex duty." *Id.* at 1094. The court noted that while it is plausible that many people have added someone's name to their own account, most people have "certainly not acted as a bank officer adding a name to a customer's bank account." *Id.* at 1090. The court explained that because the process occurs "behind closed doors" and may involve numerous unknown procedures, the plaintiff must produce an expert who is familiar with the process from the bank's

perspective to explain the procedure to the jury because the alleged breach was not obvious. *Id.* at 1090–94.

The Court holds that expert testimony is necessary for this case. As Defendants aptly note, "[a]t issue are Citizens Bank's fraud prevention and authentication procedures, which are complex and involve multiple departments." Defendants' Motion for Summary Judgment at 23. It is true that certain jobs in other industries that are not considered "professional" may also require the employee to verify a customer's identity. However, this is still not a skill every layperson is familiar with from the perspective of the verifier, and certainly not in the banking context where someone is trying to complete a wire transfer of a substantial sum. Like *Schultz*, expert testimony is required due to the general public's unfamiliarity with the banking protocols and standards for identity verification from the perspective of bank officers. Therefore, Plaintiff was required to provide expert testimony to establish the standard of care in this case.

Because Plaintiff has not provided any expert testimony to establish the standard of care, Plaintiff has failed to present sufficient evidence to go to the trier of fact. *See Schultz*, 990 A.2d at 1085–86, 1091; *Rodriguez*, 926 A.2d at 756 (Md. 2007) ("[Plaintiffs] could not adduce expert testimony on causation or breach of the standard of care, so [ ] summary judgment was appropriate"); *Brunenkant v. Suburban Hosp. Healthcare Sys., Inc.*, No. 20-cv-00150-LKG, 2024 WL 3936919, at *9 (D. Md. Aug. 26, 2024) ("Because Plaintiff lacks an expert to establish the standard of care for selecting, training, and supervising physicians, or to [show] how the

Defendants breached that standard of care in this case, he cannot prevail on his negligence claims.”). Thus, as a matter of law, Plaintiff cannot prevail on his negligent training and supervision claim. *See Schultz*, 990 A.2d at 1086, 1091.

## IV. CONCLUSION

For the reasons stated above, Defendants have shown there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on both of the remaining claims. Therefore, Defendants’ Motion for Summary Judgment is granted. An appropriate order follows.

DATED: November 13, 2026

BY THE COURT:



GAIL WEILHEIMER J.